United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HUSSEIN TAWFIK, et al.,
Plaintiffs,

v.

JPMORGAN CHASE BANK, N.A., et al.,
Defendants.

Case No. 20-cv-02946-JSC

**ORDER RE DEFENDANTS' MOTIONS TO DISMISS**

Re: Dkt. Nos. 10 & 14

Plaintiffs bring state law claims against JPMorgan Chase Bank, N.A. ("Chase"), Select Portfolio Servicing, Inc. ("SPS") and U.S. Bank, NA ("U.S. Bank") (collectively "Defendants").[1] Now before the Court are Defendants' motions to dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). After careful consideration of the parties' briefing, and having had the benefit of oral argument on July 26, 2020, the Court GRANTS Chase's motion to dismiss, and GRANTS in part and DENIES in part SPS and U.S. Bank's motion to dismiss.

## BACKGROUND

### I. The Parties

#### A. Defendants

Chase is a national banking association, organized under the laws of the United States, with its main office in Columbus, Ohio. (Dkt. No. 1 ¶ 10).[2] SPS is a corporation with its principle place of business in Utah. (Dkt. No. 1 ¶ 11). U.S. Bank is a national banking association "formed pursuant to the laws of the law of the State of Minnesota." (Dkt. No. 13 at 2.)

Chase, SPS, and U.S. Bank are engaged in, among other enterprises, "residential mortgage

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 19, 21.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.

banking[.]" (Dkt. No. 1-1 ¶ 4-6.) On September 25, 2008, Chase completed a Purchase and Assumption Agreement with the Federal Deposit Insurance Corporation ("FDIC"), through which Chase acquired assets of Washington Mutual, FA ("Washington Mutual") after Washington Mutual was taken into receivership by the FDIC. These assets included "mortgage servicing rights and obligations" previously held by Washington Mutual. (Dkt. No. 10 at 4.) Similarly, U.S. Bank, NA, "successor trustee to Bank of America, NA, successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the Wa[shington Mutual] Mortgage Pass-Through Certificates, Series 2006-AR9" acquired certain loans from Washington Mutual. (*See* Dkt. No. 14.) At all relevant times, SPS operated as U.S. Bank's loan servicing agent. (*See* Dkt. No. 14-1.)

**B. Plaintiffs**

Hussein Tawfik and Heidi Tawfik are residents of California. (Dkt. No. 1-1 ¶ 2.) In or around July 1977, Plaintiffs purchased the property located at 660 Greenwich Lane, Foster City, California 94404 (the "Foster City Property"). (Dkt. No. 18 at 5-6.) On September 14, 2006, Plaintiffs took out a $960,000.000 loan executing a Deed of Trust and Promissory Note (the "Foster City Loan") in favor of Washington Mutual. (Dkt. No. 1-1 ¶ 10; Dkt. No. 10 at 3.) Chase eventually acquired Washington Mutual and the loan. (Dkt. No. 10 at 4.) In August 2013, after defaulting on the Foster City Loan, Plaintiffs entered into a Loan Modification Agreement with Chase, who had acquired certain Washington Mutual assets. (Dkt. No. 10 at 4.)

On May 18, 2006, Plaintiffs purchased property located at 492-496 N. Whisman Road, Mountain View, California 94043 (the "Mountain View Property"). (Dkt. No. 1-1 ¶ 11; Dkt. No. 14 at 3.) To secure the financing, Plaintiffs executed a Deed of Trust and Promissory Note (the "Mountain View Loan") on the property in favor of Washington Mutual. (Dkt. No. 1-1 ¶ 11.) U.S. Bank, NA, acquired certain loans from Washington Mutual, including the Mountain View Loan. (*See* Dkt. No. 14.) A Notice of Default was recorded against the Mountain View Property on January 12, 2010. (Dkt. No. 14 at 3.) At all relevant times, SPS operated as U.S. Bank's loan servicing agent. (*See* Dkt. No. 14-1.)

On March 11, 2014, Plaintiffs filed for bankruptcy. (*Id.*) The Bankruptcy Court of the Northern District of California confirmed Plaintiffs' bankruptcy plan on August 4, 2015. (Dkt. No

United States District Court
Northern District of California

1-1 ¶ 13.)

## II. Complaint Allegations

### A. Chase

Chase refuses to abide by the contractual terms that govern its relationship with Plaintiffs, insisting instead that the total principle balance on the Foster City Loan is approximately $106,000.00 more than it actually is. Additionally, Chase has not been reporting to credit agencies that Plaintiffs have been making monthly payments on their mortgage.[3]

### B. SPS and U.S. Bank

SPS and U.S. Bank (collectively "SPS") have for years demanded more than is required under the Mountain View Loan. SPS has charged Plaintiffs $4,370.89 monthly, despite monthly principle and interest payments being fixed at $4,300.70. SPS has also failed to properly apply Plaintiffs' payments to the Mountain View Loan such that, in January 2016, SPS claimed its unpaid principal balance was $1,032,335.91. This amount does not account for approximately $80,000.00 in payments Plaintiffs made toward the loan. As such, SPS has for years claimed Plaintiffs owe an inflated amount on the Mountain View Loan and charged interest on an amount not actually owed under it. SPS has not reported Plaintiffs' monthly payments to credit agencies, despite explicitly stating on monthly statements sent to Plaintiffs that it reports the payments to credit agencies; this has severely damaged their credit rating.

## III. Procedural History

Plaintiffs filed their original complaint in the Superior Court of the State of California for the County of San Mateo on March 25, 2020, asserting multiple claims under California law against Chase, SPS, and U.S. Bank. (*See* Dkt. No. 1-1.). The complaint asserts a claim for declaratory relief, as well as claims for breach of contract, unjust enrichment, fraud, and violations of California's Unfair Competition Law, California Business & Professions Code § 17200 ("UCL"). (*Id.*) Chase removed the case to this district on April 29, 2020 on diversity jurisdiction

[3] While Plaintiffs allege that Chase has not been reporting to credit agencies that they have been making monthly payments on their mortgage, Plaintiffs did not bring a claim based on this allegation in the complaint and confirmed the same at oral argument.

United States District Court
Northern District of California

grounds. (Dkt. No. 1 at 4.) Chase filed its motion to dismiss on May 6, 2020. (*See* Dkt. No. 10.) SPS and U.S. Bank filed their motion to dismiss on May 18, 2020. (*See* Dkt. No. 14.) The motions are fully briefed. (*See* Dkt. Nos. 18 & 22; 23 & 24.)

**REQUEST FOR JUDICIAL NOTICE**

Generally, "district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). When such materials "'are presented to and not excluded by the court,' the 12(b)(6) motion converts into a motion for summary judgment under Rule 56." *Id.* (quoting Fed. R. Civ. P. 12(d)). There are, however, "two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Id.*

Pursuant to the Federal Rules of Evidence, courts may judicially notice an adjudicative fact if it is not subject to reasonable dispute because it: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

In support of its motion to dismiss, Chase requests judicial notice of six exhibits: (1) "Bankruptcy Petition Filed by Hussein and Heidi Tawfik in *In re Tawfik*, No. 14-30367 (Bankr. N.D. Cal.) on March 11, 2014"; (2) "Proof of Claim Filed by Chase on July 14, 2014 in *In re Tawfik*, No. 14-30367 (Bankr. N.D. Cal.)," containing "Plaintiffs' Promissory Note, Deed of Trust, and Loan Modification Agreement"; (3) "Purchase and Assumption Agreement ("P&A Agreement") between Federal Deposit Insurance Corporation ("FDIC") and Chase, dated September 25, 2008;" (4) "Proposed Chapter 11 Plan Filed By Hussein and Heidi Tawfik in *In re Tawfik*, No. 14-30367 (Bankr. N.D. Cal.) on June 3, 2015"; (5) "Stipulation between Chase and Plaintiffs filed in *In re Tawfik*, No. 14-30367 (Bankr. N.D. Cal.) on July 28, 2015"; and (6) "Order Approving Plan Issued in *In re Tawfik*, No. 14-30367 (Bankr. N.D. Cal.) on August 4, 2015."

SPS and U.S. Bank request judicial notice of four exhibits in support of their motion to dismiss: (1) "Exhibits to the Motion to Approve Stipulation on Value, Use of Cash Collateral, and Plan Treatment With Respect to the First Lien Secured by Property at 492-496 N Whisman Road,

Mountain View, CA 94043, filed October 24, 2014 in the case of *In Re: Hussein Hussein Tawfik, et al*., U.S.D.C., Northern District Bankruptcy Court No. 14-30367 HLB [ECF Doc. 77-1,] and 2) the order entering the stipulation filed November 24, 2014 in the same case [ECF Doc. 92]"; (2) "Notice of Default recorded January 12, 2010"; (3) Order Approving Disclosure Statement and Confirming Plan filed August 4, 2015, in the case of *In Re: Hussein Hussein Tawfik, et al*., U.S.D.C., Northern District Bankruptcy Court No. 14-30367 HLB [ECF Doc. 146]"; and (4) "Proposed Combined Plan of Reorganization filed June 3, 2015, in the case of *In Re: Hussein Hussein Tawfik, et al*., U.S.D.C., Northern District Bankruptcy Court No. 14-30367 HLB [ECF Doc. 132]."

Plaintiffs do not oppose judicial notice of the exhibits offered by Defendants, or otherwise dispute their authenticity. Accordingly, the Court grants judicial notice of those documents pursuant to Federal Rule of Evidence 201(b). *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that judicial notice is appropriate for "undisputed matters of public record, including documents on file in federal or state courts.") (internal citation omitted); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (noting that district courts may take judicial notice of "[r]ecords and reports of administrative bodies").

## DISCUSSION

### I. Chase's Motion to Dismiss

Plaintiffs' claims against Chase arise from the same theory: Chase incorrectly insists that Plaintiffs owe approximately $106,000 more in principal under the Foster City Loan than they actually do. Because Plaintiffs' theory fails as a matter of law, all of their claims against Chase must be dismissed.

First, Plaintiffs contend that the balance Plaintiffs owed following the confirmation of their bankruptcy plan was $1,044,680.00, but that Chase nonetheless insists that the amount owed is $106,000 more than that amount. Chase responds that under the plain terms of the Loan Modification Agreement there is an interest-bearing principal amount *plus* $108,000 in deferred, non-interest bearing principal and that Plaintiffs still owe this amount. The Court agrees.

In the bankruptcy proceedings Plaintiffs and Chase stipulated to the treatment of Chase's

secured claim under the Chapter 11 reorganization plan; specifically, they stipulated that "[Chase's] legal, equitable, and contractual rights shall remain unchanged with respect to its security interest in the [Foster City] Property." (Dkt. No. 11, Ex. E at 3.) The confirmation plan did not alter the stipulation; to the contrary, the confirmation plan specifically provides that "the Debtors' COMBINED PLAN OF REORGANIZATION AND PROPOSED DISCLOSURE STATEMENT . . . is confirmed . . . *as modified* by . . . the changes to the treatment of Class 1A set forth in debtors' *stipulation* with JPMorgan Chase Bank[.]" (Dkt. No. 11, Ex. F (emphasis added).) In its Class 1A table, Plaintiffs' Proposed Chapter 11 Plan listed Chase as the creditor of "first mortgage on 660 Greenwich Lane, Foster City, CA[.]" (Dkt. No. 11, Ex. D. at 3.) Therefore, the confirmation plan specifically adopted the parties' stipulation under which Chase's rights remained unchanged, including its right to the $108,000 in deferred non-interest bearing principal. Thus, to the extent Plaintiffs' claims rest on the bankruptcy confirmation plan erasing the additional $108,000 debt they fail as a matter of law.

Second, Plaintiffs also assert that—notwithstanding the Loan Modification Agreement—the Foster City Property is bound by an Adjustable Rate Rider in the Foster City Loan that limits the unpaid principal balance to $1,056,000.000, or 110% of the original $960,000.000 loan. (Dkt. No. 1-1 ¶ 10; Dkt. Nos. 18 at 13, 11-2 at 13.) Given this limitation, Plaintiffs allege that the deferred principal balance included in the Loan Modification Agreement amounts to an approximately $106,000.00 overcharge beyond the terms of the Adjustable Rate Rider in the Foster City Loan. While the Foster City Loan was modified by the 2013 Loan Modification Agreement, Plaintiffs argue that this principal balance cap was never removed by the Loan Modification Agreement and, as such, Chase's security instrument is limited by the terms of the Adjustable Rate Rider despite the new principal balance listed in the Loan Modification Agreement. This argument, too, fails.

The 2013 Loan Modification Agreement overrides Plaintiffs' Adjustable Rate Rider under its plain and unambiguous terms. The Loan Modification Agreement states that its provisions amend and supplement both the Foster City Property's mortgage, as well as the Note secured by the mortgage. (Dkt. No. 11-2 at 47.) Under the Loan Modification Agreement, Plaintiffs

"promise[d] to pay monthly payments according to [a listed] schedule with respect to [the Modification Agreement's] Interest Bearing Principal Balance." (*Id.* at 48.) The Agreement continues: "The above terms [] shall supersede any provisions to the contrary in the [Mortgage and Note], including, but not limited to, provisions for an adjustable or step interest rate." (*Id.*) Further, the Agreement also states that Plaintiffs agree to "pay in full [] the Deferred Principal Balance" listed in the Modification Agreement of $108,100.00. (*Id.*) Accordingly, the terms of the Loan Modification Agreement supersede the Foster City Property's Adjustable Rate Rider.

***

Plaintiffs' contention that the $108,000 in deferred principal on the Chase loan was eliminated by confirmation of the bankruptcy plan is belied by the plan itself and the parties' stipulation. Similarly, their insistence that the Adjustable Note Rider survived the Loan Modification Agreement is contradicted by the plain and ambiguous language of the Loan Modification Agreement. Accordingly, all of Plaintiffs' claims against Chase must be dismissed. The dismissal shall be with prejudice as leave to amend would be futile given the plain language of the documents upon which Plaintiffs' claims depend.

## II. SPS and U.S. Bank's Motion to Dismiss

Plaintiffs' claims against SPS and U.S. Bank arise from their allegations that for years SPS has overcharged Plaintiffs for their monthly loan payments on the Mountain View Loan, have failed to credit Plaintiffs for approximately $80,000 in payments made, have charged Plaintiffs interest on amounts not actually owed, and have failed to report the payments Plaintiffs have made to credit reporting agencies.

### A. Statute of Limitations

SPS first argues that Plaintiffs' claims are time-barred. The longest statute of limitations that applies to any of Plaintiffs' claims is four years for the breach of contract claim and four years for the UCL claims. *See* Cal. Civ. Proc. Code § 337; Cal. Bus. & Prof. Code § 17208. SPS contends that Plaintiffs' claims arising from their allegation that SPS has been overcharging them approximately $70 per month more than the bankruptcy plan allows arose in August 2015—more than 4 years and 7 months before they filed this lawsuit. Further, Plaintiffs' claim that SPS failed

to credit them for $80,000 in payments arose in January 2016 at the latest, again more than four years before this lawsuit was filed.

A defendant bears the initial burden of proving a plaintiff's claims are time-barred due to a statute's limitations period. *See Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013). Typically, a cause of action for breach of contract accrues "at the time of the breach of contract, and the statute of limitations begins to run at that time regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 885 (N.D. Cal. 2018) (citation omitted).

**1. Monthly Overcharges**

SPS has met its initial burden of showing that claims based on the overcharges are time-barred. Plaintiffs allege that following the confirmation of the bankruptcy plan, SPS charged Plaintiffs $4,370.89 in principal and interest payments, despite the confirmed plan setting those payments at $4,300.00. (Dkt. No. 1-1 ¶ 18.) It follows that no later than September 2015 SPS's overcharging caused Plaintiffs' injury and their claims arising from that injury accrued. *See Aryeh*, 55 Cal. 4th at 1191. As this lawsuit was not filed until more than four years later, Plaintiffs' claims are time-barred unless they show that one of the non-statutory exceptions to the statute of limitations applies. *See id.* at 1197 (holding that plaintiff's claims regarding defendant's overcharges for copy services accrued and statute of limitations began to run when the defendant first began overcharging for copies, and that plaintiff bears burden of showing application of non-statutory exception to statute of limitations).

Plaintiffs argue that under the continuing violation doctrine or the continuous accrual doctrine they may sue on all of the overcharges. The Court agrees that the continuing accrual doctrine applies here. Under the theory of continuous accrual, "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal. 4th at 1192 (citation omitted). Cases in which the theory of continuous accrual have been applied include a variety of instances in which the plaintiff asserted a right to, or challenged the assessment of, periodic payments under contract. *See id.* at 1200 (collecting cases).

Here, each of SPS's overcharges triggers its own limitations period such that claims based on overcharges made outside the statute of limitations are barred, but claims based on overcharges imposed during the limitations period—of which there are many—are not. *See id.*

The continuing violation doctrine concerns "injuries [that] are the product of a series of small harms, any one of which may not be actionable on its own," from which "allegations of a pattern of reasonably frequent conduct" may "justify treating the acts as an indivisible course of conduct actionable in its entirety," notwithstanding that some of the alleged conduct occurred beyond the limitations period. *Aryeh*, 55 Cal. 4th at 1197-98. Unlike the continual accrual doctrine, the continuing violation doctrine is inapplicable where a complaint identifies "a series of discrete, independently actionable alleged wrongs[;]" rather, it applies in cases where a "wrongful course of conduct became apparently only through the accumulation of a series of harms[.]" *Id.* at 1198. Because each of SPS's monthly overcharges constitutes a "discrete, independently actionable" wrong, and because SPS's wrongful course of conduct was not made apparent to Plaintiffs *only* through an accumulation of overcharges—a single overcharge on its own revealed SPS's wrongful conduct—the doctrine is inapplicable. As in *Aryeh*, Plaintiffs concede they were aware of conduct they recognized as wrongful "for years." (Dkt. No. 1-1 ¶ 18; Dkt. No. 23 at 5.) This further supports the conclusion that the continuing violation doctrine does not apply here.

**2. Failure to Credit**

As with Plaintiffs' claims based on the alleged overcharges, SPS have met their initial burden of showing that claims based on their failure to credit the $80,000 in payments toward the loan in January 2016 are time-barred. Plaintiffs allege that, following this initial failure to credit, SPS has "for years" improperly charged interest on an inflated amount not actually owed. (Dkt. No. 1-1 ¶¶ 19-21.) However, these interest charges originate from the unacknowledged $80,000 payment in January 2016—thus it follows that, as with the overcharges, no later than January 2016 SPS's failure to credit caused Plaintiffs' injury and their claims arising from that injury accrued. *See Aryeh*, 55 Cal. 4th at 1191. As the lawsuit was filed over four years later, Plaintiffs' claims are time-barred unless they meet their burden of showing that a non-statutory exception to the statute of limitations applies. *See id.* at 1197.

For the same reasons the continuous accrual doctrine applies to Plaintiffs' claims based on the overcharges, the continuous accrual doctrine applies to their claims based on SPS's failure to credit the $80,000 payment in January 2016 *and* subsequent interest charged on the loan amount inflated by this failure to credit. Here, as with SPS's overcharges, each month SPS improperly charged interest on the amount inflated by SPS's failure to credit the $80,000 triggers its own statute of limitations period such that claims based on improper interest charges made outside the statute of limitations period are barred, but claims based on charges imposed during the limitations period are not barred. SPS's argument to the contrary—that the failure to credit Plaintiffs' $80,000 is a discrete injury whose statute of limitation has lapsed—overlooks how it continues to charge monthly interest on the loan amount inappropriately inflated by this failure to credit.

Again as with the overcharge claims, the continuous violation doctrine does not apply. Each month Plaintiffs were aware that the interest charged was based on a loan amount improperly inflated by SPS's failure to credit Plaintiffs' $80,000 of payments in January 2016. Because these monthly interest charges constitute "discrete, independently actionable" wrongs, the continuous violation doctrine does not apply to Plaintiffs' claims based on the improperly charged interest and disregard for Plaintiffs' $80,000 in payments. *See Aryeh*, 55 Cal. 4th at 1198.

The question remaining is how the statute of limitations applies to the actual failure to credit the $80,000 as opposed to later-charged interest based on the failure to credit. Applying the continuous accrual doctrine to Plaintiffs' declaratory relief and breach of contract claims based on SPS's failure to credit, the originating uncredited $80,000 remains outside the statute of limitations.[4] However, absent SPS's failure to credit Plaintiff's $80,000 payment, the subsequently improper and inaccurate interest charges would not exist. Therefore, resolution of the interest charges necessarily requires resolving the $80,000 failure to credit. The nature of SPS's breach subsumes the failed $80,000 credit in January 2016 within each interest charge

---

[4] The limitations period for declaratory relief claims depends on "the right or obligation sought to be enforced, and the statute of limitations generally follows its application to actions for damages or injunction on the same rights and obligations." *Ginsberg v. Gamson*, 205 Cal. App. 4th 873, 883 (2012) (internal quotations and citations omitted) (holding that the statute of limitations for a declaratory relief claim based on a contract claim was four years); *see also United Pac.-Reliance Ins. Co. v. DiDomenico*, 173 Cal. App. 3d 673, 676 (1985).

whose miscalculations depend on it. As such, any declaratory relief action addressing monthly interest miscalculations predicated on the January 2016 failure to credit brought within the statute of limitations established by Plaintiffs' continual accrual theory would necessarily require resolution of the January 2016 failed $80,000 credit. Accordingly, SPS has not shown as a matter of law that should Plaintiffs' allegations of failing to credit $80,000 in payments be proven true, any remedy that involves crediting them for those payments would be time-barred.

**3. Failure to Report Monthly Mortgage Payments**

SPS has not met its burden in showing that Plaintiffs' claims based on SPS's failure to report Plaintiffs' payments to credit agencies are time-barred. The complaint does not allege when SPS began not reporting to credit agencies that Plaintiffs have been making payments on their mortgage. SPS argues that Plaintiffs should have known the credit reporting was awry on the basis of SPS's January 2016 failure to credit, and that this inaccuracy in crediting payments demonstrates an inaccuracy in what SPS would have been reporting to credit agencies. (Dkt. No. 24 at 4.) Thus, according to SPS, its improper or failed credit reporting began at least that early and at that time was readily apparent, such that Plaintiffs' injury and their claims arising from this injurious failure to report began to accrue in January 2016. *See Aryeh*, 55 Cal. 4th at 1191. The difficulty with this argument is that it assumes Plaintiffs' failure to report to credit agencies theory is based on the January 2016 failure to credit $80,000 in payments, but the vague complaint does not so allege, which is a problem different from the statute of limitations.

***

In sum, Plaintiffs' challenges to monthly overcharges that occurred outside the limitations period are barred, but SPS has not met its burden of showing that Plaintiffs cannot challenge monthly overcharges made within four years of the complaint's filing or the failure to credit for $80,000 in payments. Further, it has not shown as a matter of law that the claim based on the failure to report mortgage payments to credit reporting agencies is time barred.

**B. Failure to State a Claim**

**1. Monthly Overcharge Claims**

**a. Breach of Contract**

Regarding the breach of contract claim, SPS argues that Plaintiffs' allegations are directly refuted by the bankruptcy plan because the plan approved a stipulation between the parties that set forth an approximate monthly payment amount based on Plaintiffs' outstanding loan amount. In other words, the plan merely confirmed that the monthly payment would be based on the amount owed at the time of plan confirmation, a fixed interest rate, and the loan's length. Under this formulation, the monthly charge on the Mountain View Property is $4,370.89 rather than $4,300.70. Because the bankruptcy plan approved the parties' stipulation, SPS contends the plan did not fix the monthly charge in the amount of $4,300.70.

The Bankruptcy Court approved the parties' Stipulation and incorporated its terms through the confirmation plan. (*See* Dkt. No. 14-1 at 38-39; 53.) The Stipulation lists the amount due on the Mountain View Property as $1,029,026.46, its interest rate at four percent, and Plaintiffs' monthly payment as $4,300.70 "plus $1,128.81 for tax impound" to be paid, as the Stipulation states, through August 1, 2047. (Dkt. No. 14-1 at 7 ¶ 6; 52-53.) The Stipulation itself set the monthly payment on the Mountain View Property at $4,300.70, and no adjustments to either the Stipulation's enumerated $4,300.70 or the bases on which it was calculated were made during the plan's confirmation. (Dkt. No. 14-1 at 7 ¶¶ 4-8.) SPS's interpretation of the confirmation plan—that it did not fix the Stipulation's monthly payment—is belied by the confirmation plan's *incorporation* and adoption of the Stipulation's terms that themselves state the $4,300.70 monthly payment amount. (Dkt. No. 14-1 at 52-53.) While the proposed bankruptcy plan states that payments on the Mountain View Property contractually due "[are] debtors' estimates of the amounts due at confirmation," (*Id.* at 53), thus supporting SPS's argument that Plaintiffs' monthly payment amounts were approximate, this language is contradicted by the Stipulation's plain language that set the monthly principal and interest payments at $4,300.70 per month.

Therefore, drawing all reasonable inferences in Plaintiffs' favor, the Court cannot conclude

that the breach of contract claim fails as a matter of law.[5] *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

**b. Unjust Enrichment**

A claim for unjust enrichment fails where parties have an enforceable, binding agreement. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) (citation omitted). Plaintiffs' claim for unjust enrichment is therefore dismissed with prejudice, given that the nature of the parties' contractual dispute is one of *interpretation*. As a matter of law, the existence of the parties' valid contract—its disputed interpretation notwithstanding—precludes Plaintiffs from bringing an unjust enrichment claim.

**c. UCL**

The UCL is written disjunctively and establishes "three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (internal quotations and citation omitted). The UCL's unlawful prong requires an underlying violation of state or federal law—a claim for breach of contract is insufficient to give rise to a violation of its unlawful prong. *See Boland, Inc. v. Rolf C. Hagen (USA) Corp.*, 685 F. Supp. 2d 1094, 1110 (E.D. Cal. 2010) ("A breach of contract . . . is not itself an unlawful act for purposes of the UCL" because contractual duties are "voluntarily undertaken by parties to the contract, and not imposed by state or federal law.") (internal quotations and citations omitted). Because Plaintiffs' underlying claim is one for breach of contract, their claim under the UCL's unlawful prong fails as a matter of law. While courts have developed three tests for analyzing claims under the UCL's unfairness prong, *see Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247 (2010), the Court need not reach these tests because Plaintiffs' allegation that SPS violated the UCL under this prong is no more than a "legal conclusion couched

[5] A valid contract exists between the parties, *see* Cal. Civ. Code § 1550, and so SPS's alleged overcharges constitute a breach as required under the cause of action for breach of contract. *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009). Because a controversy exists regarding the parties' duties under it, Plaintiffs' claim for declaratory relief based on the overcharges is likewise appropriate. *See Brownfield v. Daniel Freeman Marina Hosp.*, 208 Cal. App. 3d 405, 410 (1989); *see also Gilkyson v. Disney Enterprises, Inc.*, 244 Cal. App. 4th 1336, 1346-47 (2016) (sustaining plaintiffs' claim for declaratory relief where breach of contract claim was brought on a theory of continuous accrual).

as a factual allegation," *see Twombly*, 550 U.S. at 555. Plaintiffs allege only that SPS's conduct amounted to "unfair" business practices, and that SPS's fraud "constitutes unfair business practices" in violation of the UCL. (Dkt. No. 1-1 ¶¶ 62-64.) As such, Plaintiffs have offered no more than "naked assertion[s] devoid of factual enhancement," *Iqbal*, 556 U.S. at 678, and their claim under the UCL's unfairness prong must be dismissed.

Accordingly, the Court dismisses Plaintiffs' UCL claims with leave to amend.

**2. Failure to Report Fraud Claim**

Federal Rule of Civil Procedure 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In particular, the complaint's "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir.1997)).

Simply put, Plaintiffs' fraud claim is insufficiently particularized. Plaintiffs claim only that SPS made a false promise when it said in its monthly statements that it reported to credit agencies, even though "it did not and did not intend to." (Dkt. No. 1-1 ¶ 56.) Plaintiffs fail to state when or where specifically SPS made its allegedly fraudulent statements; the dates, and whether the statements were made on paper or electronically, for instance, are not pled in the complaint. Furthermore, Plaintiffs do not allege any facts to support their contention that SPS did not intend to report Plaintiffs' payments to credit reporting agencies. Indeed, Plaintiffs do not provide sufficient allegations to discern whether they are alleging SPS did not report any payments at all, or whether they only reported partial amounts. Fundamentally, Plaintiffs do not provide SPS with a sufficient explanation of why SPS's statements regarding the credit reporting were fraudulent.[6] *See Vess*, 317 F.3d at 1106. The Court grants SPS's motion to dismiss Plaintiffs' fraud claims with leave to amend.

[6] Because claims under the UCL's fraudulent prong are subject to Rule 9(b)'s heightened pleading standard as well, *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), Plaintiffs cannot make out a claim under the UCL's fraudulence prong for these reasons.

**CONCLUSION**

For the reasons set forth above, the Court GRANTS Chase's motion to dismiss with prejudice. The Court GRANTS in part and DENIES in part SPS and U.S. Bank's motion to dismiss. Plaintiffs' unjust enrichment claim is dismissed with prejudice, whereas Plaintiffs' UCL and fraud claims are dismissed with leave to amend. Plaintiffs' claims for declaratory relief and breach of contract are not dismissed. Plaintiffs' amended complaint against SPS, if they choose to amend, must be filed within 21 days of this Order. Plaintiffs may not add any new claims to the amended complaint without first seeking leave of Court.

The Court will hold and an initial case management conference with Plaintiffs and SPS/U.S. Bank on October 29, 2020 at 1:30 p.m. A joint case management conference statement is due one week in advance.

This Order disposes of Docket Nos. 10 & 14.

**IT IS SO ORDERED.**

Dated: August 26, 2020

JACQUELINE SCOTT CORLEY
United States Magistrate Judge