UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUSSEIN TAWFIK, et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>SELECT PORTFOLIO SERVICING, INC., et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-02946-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 59 |

Plaintiffs bring state law claims against U.S. Bank, N.A.[1] and its mortgage loan servicer, Select Portfolio Servicing, Inc.[2] Before the Court is Defendants' motion for summary judgment, (Dkt. No. 59), which is fully briefed, (Dkt. Nos. 60–63).[3] After carefully considering the parties' briefing, the Court concludes that oral argument would not be helpful and VACATES the September 2, 2021 hearing. *See* N.D. Cal. Civ. L.R. 7-1(b). For the reasons explained below, the Court GRANTS Defendants summary judgment on the fraud claim and DENIES their motion on the contract claim.

**FACTUAL BACKGROUND**

In May 2006, Plaintiffs Hussein Tawfik and Heidi Tawfik purchased a property located at 492-496 N. Whisman Road in Mountain View, California. (Dkt. No. 36 ¶ 8; Dkt. No. 39 ¶ 8.)

---

[1] Defendant asserts that it is "successor trustee to Bank of America, N.A., successor in interest to LaSalle Bank NA, as trustee, on behalf of the holders of the Wa[shington Mutual] Mortgage Pass-Through Certificates, Series 2006-AR9" and has been erroneously sued as "U.S. Bank, N.A." (Dkt. No. 39 at 1.)

[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 19, 21.)

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Plaintiffs financed the property with a Deed of Trust and Promissory Note in favor of Washington Mutual.  (Dkt. No. 36 ¶ 8; Dkt. No. 39 ¶ 8; *see* Dkt. No. 60-5 at 16–31.)  The deed of trust is now in favor of Defendants, and Select Portfolio Servicing, Inc. has operated as the mortgage loan servicer on Plaintiffs' loan at all relevant times.  (Dkt. No. 59 at 9:11-12; Dkt. No. 36 ¶¶ 4–5; Dkt. No. 39 ¶ 4.)  A Notice of Default was recorded against the property on January 12, 2010.  (Dkt. No. 14-1 at 42–43.)

In 2011, Plaintiffs filed for bankruptcy in the Bankruptcy Court of the Northern District of California.  (Dkt. No. 60-2.)  The property loan was discharged in the bankruptcy.  (Dkt. No. 60-1 at 18:10-25.)  Plaintiffs did not reaffirm that discharged debt.  (*Id.* at 54:8–55:22.)  After the 2011 bankruptcy, Plaintiffs decided not to take out any other loans or credit and began to pay all their expenses by cash or check.  (*Id.* at 27:19–28:22, 30:1-10; Dkt. No. 60-8 at 5:8–6:3.)

In 2014, Plaintiffs filed for Chapter 11 bankruptcy in the same Bankruptcy Court.  (Dkt. No. 36 ¶ 10; Dkt. No. 39 ¶ 10; Dkt. No. 60-5.)  When they filed, Plaintiffs certified that they had received a briefing from a credit counseling agency within the preceding 180 days.  (Dkt. No. 60-1 at 25:13-24; Dkt. No. 60-5 at 5–8.)  Mr. Tawfik testified that he does not recall the credit counseling.  (Dkt. No. 60-1 at 25:25–26:2.)

In November 2014, the Bankruptcy Court approved Plaintiffs' and Defendants' stipulation on the "value, use of cash collateral, and plan treatment" with regard to the property loan.  (Dkt. No. 60-5 at 9–39.)  At the time of bankruptcy filing, Defendants' claim on the property loan was $1,006,314.08; at the time of stipulation, it was $1,029,026.46.  (Dkt. No. 60-5 at 10–11.)  The stipulation states:

> [Defendants'] fully secured first lien on [the property] is approximately $1,029,026.46 and (pre-confirmation payments will be based on approximate loan total and adjustments will be made at the time of confirmation on total debt) the total debtor [sic] will be repaid an annual 4% fixed interest rate with payments calculated on a 480 month amortization schedule. . . .
>
> The principal and interest payment under these agreed terms is $4,300.70 per month.
>
> The first payment under this agreement is due November 1, 2014 in the amount of $5,429.51, which consists of principal and interest of $4,300.70 + taxes $1,128.81. . . .

> All other terms of the Deed of Trust and Note not directly altered by this agreement will remain in full force and effect.

(*Id.* at 11–12.)  Plaintiffs' monthly payments would continue through August 1, 2047.  (*Id.* at 11.)

On August 4, 2015, the Bankruptcy Court confirmed Plaintiffs' bankruptcy plan.  (Dkt. No. 36 ¶ 10; Dkt. No. 39 ¶ 10; *see* Dkt. No. 14-1 at 45–66.)  The plan incorporated the terms of the stipulation by reference and specified that Plaintiffs owed $1,029,026.46 to U.S. Bank with an interest rate of 4 percent, a monthly payment of "$4,300.70 plus $1,128.81 for tax impound," and a term until August 1, 2047.  (Dkt. No. 14-1 at 38–39, 52–53.)

Defendants sent Plaintiffs a statement each month about their loan.  (Dkt. No. 60-1 at 43:1-20.)  The monthly statements included the following:

> <u>Credit Reporting</u> SPS furnishes information to consumer reporting agencies.  You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your Note and Mortgage.  If you believe such information is inaccurate, you may call Customer Service at (800) 258-8602, submit a written Notice of Error to the P.O. Box listed above, or submit a dispute with the consumer reporting agency.

(Dkt. No. 60-6 at 3.)  Mr. Tawfik testified that "for years" they relied on the declaration in the monthly statements and believed that Defendants would "report our good paying record to the credit agencies."  (Dkt. No. 60-1 at 43:21–45:14.)  Ms. Tawfik testified that she had not read the declaration and that Mr. Tawfik generally handles the couple's finances.  (Dkt. No. 60-8 at 7:5-15, 4:8–5:3.)

Beginning in March 2016, Defendants' monthly statement to Plaintiffs showed a monthly payment of $5,429.51, including $930.10 towards the principal, $3,440.79 towards interest, and $1,058.62 towards "Escrow (Taxes and Insurance)."  (Dkt. No. 60-1 at 49:9-21, 50:19–52:21; Dkt. No. 60-7.)  Plaintiffs paid that amount beginning on March 18, 2016, (Dkt. No. 60-7 at 2), for a monthly principal and interest payment of $4,370.89.  (Dkt. No. 60-1 at 49:9-21, 50:19–52:21.)

Around October 2019, Plaintiffs went to a car dealership to buy a used car.  (*Id.* at 9:15-18, 10:12-16.)  They offered to make a $10,000 down payment on a $40,000 car and applied for credit to finance the rest.  (*Id.* at 9:18-21.)  The dealer told them they could not finance that amount

because Plaintiffs had no credit. (*Id.* at 9:21-22.) The dealer had called 12 financial institutions and all declined to give Plaintiffs credit. (*Id.* at 10:20–11:5.) Plaintiffs testified that they were "surprised" because they had been making monthly payments to Defendants for years and thought that Defendants would report their good credit to credit reporting agencies. (*Id.* at 9:23–10:3; Dkt. No. 60-8 at 8:9–9:7.) The interaction at the dealership led Plaintiffs to look into their monthly payments to Defendants and conclude they were being overcharged. (Dkt. No. 60-1 at 53:5-9, 3:21–4:25.) Plaintiffs stopped making monthly payments to Defendants in October 2019, (*id.* at 3:21-24), and filed suit in March 2020, (*see* Dkt. No. 1-1).

## DISCUSSION

Plaintiffs' claims arise from their allegations that for years Defendants have overcharged Plaintiffs for their monthly payments, have failed to credit approximately $80,000 in payments made, have charged Plaintiffs interest on amounts not actually owed, and have failed to report the payments Plaintiffs made to credit reporting agencies. Defendants move for summary judgment on all claims: breach of contract, fraud, declaratory relief, and unfair business practices pursuant to California's Unfair Competition Law, California Business and Professions Code § 17200.

Plaintiffs submit no factual matter in connection with their opposition. (Dkt. No. 61.) In one instance, Plaintiffs' opposition cites an exhibit to Defendants' motion, (*id.* at 15:5-6); otherwise, the opposition relies entirely on the allegations in Plaintiffs' amended complaint and on a declaration by Plaintiffs' counsel, (Dkt. No. 61-1). Neither the allegations in an unverified complaint nor the legal conclusions of counsel can create a genuine issue of material fact sufficient to withstand summary judgment. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995); *Aguilar v. Int'l Longshoremen's Union Local No. 10*, 966 F.2d 443, 447 (9th Cir. 1992). As such, the Court scrutinizes the factual matter submitted by Defendants to determine whether a genuine dispute of material fact exists.[4]

### I.     Breach of Contract Claim

---

[4] Relatedly, the Court STRIKES Plaintiffs' counsel's declaration because it contains only legal conclusions and argument. N.D. Cal. Civ. L.R. 7-5(b). (Dkt. No. 61-1; *see* Dkt. No. 63 (Defendants' objection).)

4

1    Under California law, the elements of breach of contract are "(1) the existence of the
2    contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)
3    the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121
4    (Cal. 2011). Defendants argue that the breach of contract claim fails because it is entirely barred
5    by the statute of limitations; there was no breach; and Plaintiffs neither performed nor had an
6    excuse for nonperformance.

### A.   Statute of Limitations

The statute of limitations for breach of contract is four years. *See* Cal. Civ. Proc. Code § 337. In the order denying in part Defendants' motion to dismiss Plaintiffs' original complaint, the Court determined that the continuous accrual doctrine applies here. (Dkt. No. 34 at 7–9.) Thus, Plaintiffs are within the statute of limitations for monthly overcharges on or after March 25, 2016, four years prior to filing their complaint.[5] *See Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875–76 (Cal. 2013) ("[A] series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period."). *Cf. Ramos v. Wells Fargo Bank, N.A.*, 2018 WL 3036913, at *3–4 (N.D. Cal. June 19, 2018) (distinguishing *Aryeh* where plaintiff received statements within limitation period showing balance that had accrued prior to limitation period, as opposed to receiving statements within limitation period that showed "new improper charges").

Defendants acknowledge the Court's ruling but argue that it incorrectly applied *Aryeh*. (Dkt. No. 59 at 15–17.) They present no new evidence other than what the Court considered in connection with the prior order. Thus, the statute of limitations argument is unavailing. *See* N.D. Cal. Civ. L.R. 7-9(b)(1)-(3).

### B.   Breach

Defendants next argue there was no breach because their adjustment of the monthly payment amount was authorized by the contract. The plan confirmed by the Bankruptcy Court

---

[5] Plaintiffs first paid the alleged overcharge on March 18, 2016. (Dkt. No. 60-7 at 2.)

incorporated the parties' stipulation by reference. (Dkt. No. 14-1 at 45–66.) Consistent with the stipulation, the plan also specifically states that Plaintiffs owed $1,029,026.46 to U.S. Bank with an interest rate of 4 percent, a monthly payment of "$4,300.70 plus $1,128.81 for tax impound," and a term until August 1, 2047. (*Id.* at 38–39, 52–53.) The stipulation states the same, and also provides:

> [Defendants'] fully secured first lien on [the property] is approximately $1,029,026.46 and (pre-confirmation payments will be based on approximate loan total and adjustments will be made at the time of confirmation on total debt) the debtor [sic] will be repaid an annual 4% fixed interest rate with payments calculated on a 480 month amortization schedule.

(Dkt. No. 60-5 at 11.)

Thus, the record indicates that the November 2014 stipulation allowed the payment amounts to be "adjust[ed] . . . at the time of confirmation," but that the plan confirmation made no adjustments to the stipulated $4,300.70 monthly principal and interest payment or the bases on which the payment was calculated. (*See* Dkt. No. 34 at 12–13.) The record also indicates that Defendants made an adjustment sometime before March 18, 2016, the date when Plaintiffs first paid a principal and interest payment of $4,370.89 instead of $4,300.70. (Dkt. No. 60-1 at 49:9-21, 50:19–52:21; Dkt. No. 60-7.) But the record does not show that Defendants made that adjustment "at the time of confirmation on total debt."[6] (Dkt. No. 60-5 at 11.) Thus, even assuming for present purposes that Defendants could make a valid adjustment without any involvement from Plaintiffs or the Bankruptcy Court, the record does not show that they made an adjustment at the time contemplated by the stipulation and the confirmed bankruptcy plan. *See Minkler v. Safeco Inc. Co.*, 232 P.3d 612, 617 (Cal. 2010) ("If contractual language is clear and explicit, it governs." (citation omitted)); *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) ("The clear and explicit meaning of [the contract] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to

---

[6] The Court also notes that the contract's syntax is puzzling. "[T]he total debtor will be repaid an annual 4% fixed interest rate with payments calculated on a 480 month amortization schedule" does not make sense. (Dkt. No. 60-5 at 11.)

incorporated the parties' stipulation by reference. (Dkt. No. 14-1 at 45–66.) Consistent with the stipulation, the plan also specifically states that Plaintiffs owed $1,029,026.46 to U.S. Bank with an interest rate of 4 percent, a monthly payment of "$4,300.70 plus $1,128.81 for tax impound," and a term until August 1, 2047. (*Id.* at 38–39, 52–53.) The stipulation states the same, and also provides:

> [Defendants'] fully secured first lien on [the property] is approximately $1,029,026.46 and (pre-confirmation payments will be based on approximate loan total and adjustments will be made at the time of confirmation on total debt) the debtor [sic] will be repaid an annual 4% fixed interest rate with payments calculated on a 480 month amortization schedule.

(Dkt. No. 60-5 at 11.)

Thus, the record indicates that the November 2014 stipulation allowed the payment amounts to be "adjust[ed] . . . at the time of confirmation," but that the plan confirmation made no adjustments to the stipulated $4,300.70 monthly principal and interest payment or the bases on which the payment was calculated. (*See* Dkt. No. 34 at 12–13.) The record also indicates that Defendants made an adjustment sometime before March 18, 2016, the date when Plaintiffs first paid a principal and interest payment of $4,370.89 instead of $4,300.70. (Dkt. No. 60-1 at 49:9-21, 50:19–52:21; Dkt. No. 60-7.) But the record does not show that Defendants made that adjustment "at the time of confirmation on total debt."[6] (Dkt. No. 60-5 at 11.) Thus, even assuming for present purposes that Defendants could make a valid adjustment without any involvement from Plaintiffs or the Bankruptcy Court, the record does not show that they made an adjustment at the time contemplated by the stipulation and the confirmed bankruptcy plan. *See Minkler v. Safeco Inc. Co.*, 232 P.3d 612, 617 (Cal. 2010) ("If contractual language is clear and explicit, it governs." (citation omitted)); *Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 627 (Cal. 1995) ("The clear and explicit meaning of [the contract] provisions, interpreted in their ordinary and popular sense, unless used by the parties in a technical sense or a special meaning is given to

---

[6] The Court also notes that the contract's syntax is puzzling. "[T]he total debtor will be repaid an annual 4% fixed interest rate with payments calculated on a 480 month amortization schedule" does not make sense. (Dkt. No. 60-5 at 11.)

United States District Court
Northern District of California

them by usage, controls judicial interpretation." (internal quotation marks and citation omitted)).

There is sufficient evidence for a reasonable trier of fact to decide in favor of Plaintiffs on breach. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, Defendants are not entitled to judgment as a matter of law on the grounds that there was no breach.

### C. Performance

Finally, Defendants argue that Plaintiffs failed to perform by ceasing payments in October 2019 with no excuse for nonperformance.

"[A] plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Consol. World Invs., Inc. v. Lido Preferred Ltd.*, 11 Cal. Rptr. 2d 524, 527 (Cal. 1992). To negate a claim for breach of contract, the plaintiff's nonperformance must be material. *Brown v. Grimes*, 120 Cal. Rptr. 3d 893, 902–03 (Cal. Ct. App. 2011). "Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact." *Id.* at 903. "However, if reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Id.* (citation omitted).

Plaintiffs offer no argument on this point. Nonetheless, Defendants do not argue that Plaintiffs breached or failed to perform at any time before October 2019; yet, Plaintiffs claim damages going back two years before their nonperformance. Defendants do not explain why they would be entitled to summary judgment on the entire breach of contract claim based on Plaintiffs' later failure to make payments. It may be that any amounts Defendants owe Plaintiffs will be dwarfed by what Plaintiffs owe Defendants given Plaintiffs' decision to stop making payments in any amount, but Defendants have not established that as grounds for dismissing Plaintiffs' contract claim on summary judgment.

\* \* \*

Accordingly, Defendants are not entitled to summary judgment on Plaintiffs' claim for breach of contract.

## II. Fraud Claim

Plaintiffs' fraud claim arises from Defendants' representation in its monthly statements that it reported Plaintiffs' payments to credit reporting agencies even though it did not do so. Confusingly, Plaintiffs recite the elements of four theories of fraud—concealment, intentional misrepresentation, negligent misrepresentation, and false promise—but do not specify which they allege. (Dkt. No. 36 ¶¶ 38–48; Dkt. No. 61 at 13–16.) The Court accepts Defendants' characterization, which Plaintiffs did not counter in their opposition, that Plaintiffs' theories are intentional misrepresentation and false promise. (*See* Dkt. No. 59 at 20.) Defendant argues that both theories fail. The Court agrees.

The elements of false promise are: (1) material misrepresentation; (2) knowledge of its falsity; (3) intent to defraud or induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Court*, 909 P.2d 981, 984 (Cal. 1996). Defendants first take issue with element (3). They argue there is no evidence that they intended the credit reporting language to induce Plaintiffs to make monthly payments, in the hopes of improving their credit score, or to forgo other opportunities to build credit. (*See* Dkt. No. 36 ¶ 54.)

"To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor did not intend to perform at the time [they] made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. Rptr. 2d 861, 863 (Cal. Ct. App. 1991). "Affirmative evidence is necessary to avoid summary judgment because mere nonperformance is not enough to show intent to defraud." *Netbula, LLC v. BindView Dev. Corp.*, 516 F. Supp. 2d 1137, 1157 (N.D. Cal. 2007). Plaintiffs have not identified any evidence that suggests Defendants included the credit reporting language with intent "to deceive or induce the promise to do or not do a particular thing." *Tarmann*, 2 Cal. Rptr. 2d at 863. Nor does the evidence submitted by Defendants lend any support to that idea. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' false promise claim of fraud. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although not the grounds argued by Defendants, this same reasoning dooms Plaintiffs'

8

intentional misrepresentation claim. To succeed on this species of fraud, Plaintiffs must prove Defendants' "intent to defraud." (Dkt. No. 61 at 14.) On the record before the Court, no reasonable trier of fact could find that Defendants intended to defraud Plaintiffs; indeed, the record is silent as to the failure to report the payments to the credit reporting agencies. Thus, Defendants are entitled to judgment on this fraud claim as well.

As the Court raised this issue *sua sponte*, *see* Fed. R. Civ. P. 56(f), if Plaintiffs believe in good faith that there is a genuine dispute on the intent to deceive element, then on or before September 6, 2021 Plaintiffs may submit a brief and any supporting evidence as to that fraud theory. The Court will advise Defendants if a response is required.

### III. Declaratory Relief

Plaintiffs' declaratory relief claim is predicated on the breach of contract claim. (Dkt. No. 36 ¶¶ 23–26.) Because summary judgment on that claim is denied, so too with the claim for declaratory relief.

### IV. Unfair Business Practices

Plaintiffs' claim of unfair business practices under California's Unfair Competition Law is predicated on both the breach of contract claim and the fraud claim. (Dkt. No. 36 ¶¶ 49–59.) Therefore, summary judgment is denied as to unfair business practices based on breach of contract, but granted as to unfair business practices based on fraud.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED in part and DENIED in part. The motion is GRANTED as to the fraud claim (third cause of action) and unfair business practices claim based on fraud (fourth cause of action). The Court will reconsider summary judgment of the intentional misrepresentation fraud claim (and accompanying unfair business practices claim) if on or before September 6, 2021, Plaintiff makes a supplemental submission that raises a genuine dispute of fact. The Court will advise Defendants if a response is required. The motion is DENIED as to the declaratory relief claim (first cause of action), breach of contract claim (second cause of action), and unfair business practices claim based on breach of contract (fourth cause of action).

The September 2, 2021 hearing is VACATED.

This Order disposes of Docket No. 59.

**IT IS SO ORDERED.**

Dated: August 30, 2021

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge